## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re: CYBER LITIGATION INC.,**<br><br>**Debtor.** | **Chapter 11**<br><br>**Case No. 20-br-12702 (CTG)** |
| **DRIVETRAIN, LLC (in its capacity as Trustee of the Cyber Litigation Trust)**<br><br>**Plaintiff,**<br><br>   v.<br><br>**ADAM P. ROGAS,**<br><br>**Defendant.** | **Case No. 24-ap-50180 (CTG)** |

### DEFENDANT ADAM P. ROGAS' RESPONSE BRIEF IN OPPOSITION TO THE PLAN TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

**RICHARDS, LAYTON & FINGER, P.A.**
Russell C. Silberglied (No. 3462)
Robert C. Maddox (No. 5356)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
silberglied@rlf.com
maddox@rlf.com

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
William M. Sullivan, Jr. (*pro hac vice*)
Alex G. Anderson (*pro hac vice*)
1200 Seventeenth Street, NW
Washington, D.C. 20036
Telephone: (202) 663-8000
Facsimile: (212) 663-8007
wsullivan@pillsburylaw.com
alex.anderson@pillsburylaw.com

*Counsel for Defendant Adam P. Rogas*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................. 4

    A.  Mr. Rogas Founds NS8. ..................................................................................... 4

    B.  The DOJ Matter................................................................................................... 7

    C.  The SEC Matter................................................................................................... 8

    D.  Bankruptcy Proceedings. .................................................................................... 9

SUMMARY JUDGMENT STANDARD ............................................................................... 9

ARGUMENT....................................................................................................................... 10

I.   This Court Lacks Subject Matter Jurisdiction over the Trustee's State Law Claims and Lacks Authority to Enter a Final Order on Any of the Trustee's Claims ........................................ 10

    A.  This Court lacks jurisdiction over the Trustee's common law claims. ............................ 10

    B.  This Court lacks authority to enter a final judgment on any of the Trustee's claims. ...... 12

II.  The Trustee Fails Its Burden of Proof; the Summary Judgment Motion Is a Flawed *Sub Rosa* Attempt at Offensive, Non-Mutual Preclusion. ....................................................... 13

III. The Trustee Fails to Establish Entitlement to Summary Judgment on the Statutory Claims. 15

    A.  The Trustee has not established a voidable transfer of estate property to Mr. Rogas....... 15

    B.  The Trustee's section 548 constructive fraud, section 544, and unjust enrichment claims are barred because the section 546(e) safe harbor protects the Tender Offer Proceeds transfer from avoidance. ............................................................................. 18

    C.  As to the alleged constructively fraudulent transfers, the Trustee has not established that the Debtor was insolvent or that the Debtor received reasonably equivalent value in exchange for the transfers made to Mr. Rogas................................................................ 20

    D.  Portions of the Trustee's statutory claims are time-barred................................................ 24

IV. The Trustee Fails to Establish Entitlement to Summary Judgment on the Common Law Claims. ............................................................................................................... 26

    A.  The Trustee has not (and cannot) established the requisite elements of its common law fraud and unjust enrichment claims. .................................................................... 26

V.   The Trustee Fails to Establish the Measure of its Claimed Damages.................................... 28

**TABLE OF AUTHORITIES**

Page(s)

Cases

*In re Adam Aircraft Indus., Inc.*,
510 B.R. 342 (10th Cir. B.A.P. 2014), *aff'd*, 805 F.3d 888 (10th Cir. 2015)..........................22

*In re Am. Basketball League, Inc.*,
317 B.R. 121 (Bankr. N.D. Cal. 2004) ....................................................................................17

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
2016 WL 4290525 (S.D.N.Y. Aug. 11, 2016), *aff'd*, 716 F. App'x 23 (2d Cir. 2017)...........23

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................................10

*In re Art Institute of Philadelphia LLC*,
2022 WL 18401591 (Bankr. D. Del. Jan. 12, 2022)................................................................27

*Baldi v. Samuel Son & Co.*,
548 F.3d 579 (7th Cir. 2008) ...................................................................................................22

*In re Ballantyne Brands, LLC*,
656 B.R. 117 (Bankr. W.D.N.C. 2023)....................................................................................24

*Begier v. I.R.S.*,
496 U.S. 53 (1990)....................................................................................................................16

*Bender v. City of New York*,
78 F.3d 787 (2d Cir. 1996)..................................................................................................29, 30

*In re Bos. Generating LLC*,
617 B.R. 442 (Bankr. S.D.N.Y. 2020)......................................................................................19

*Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*,
318 B.R. 276 (Bankr. S.D.N.Y. 2004).....................................................................................16

*Butner v. United States*,
440 U.S. 48 (1979)....................................................................................................................16

*BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.)*,
437 B.R. 160 (Bankr. D. Del. 2010) ........................................................................................11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................................10

iii

*Cenco Inc. v. Seidman & Seidman*,
   686 F.2d 449 (7th Cir. 1982) ...............................................................................27

*In re Centaur, LLC*,
   2013 WL 4479074 (Bankr. D. Del. Aug. 19, 2013) ..............................................21

*Charys Liquidating Tr. v. McMahan Sec. Co., LP (In re Charys Holding Co.)*,
   443 B.R. 628 (Bankr. D. Del. 2010) .....................................................................21

*In re Com. Loan Corp.*,
   396 B.R. 730 (Bankr. N.D. Ill. 2008) ...................................................................22

*Contemporaneous Indus. Corp. v. Frost*,
   564 F.3d 981 (8th Cir. 2009) ...............................................................................20

*Debakey Corp. v. Raytheon Serv. Co.*,
   2000 WL 1273317 (Del. Ch. Aug. 25, 2000) .......................................................26

*In re DeBerry*,
   945 F.3d 943 (5th Cir. 2019) ...............................................................................28

*In re Dreier LLP*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011)..................................................................17

*Drivetrain, LLC v. DDE Partners, LLC (In re Cyber Litigation Inc.)*,
   2023 WL 6938144 (Bankr. D. Del. Oct. 19, 2023) ...................................13, 17, 26

*In re Eleva, Inc.*,
   302 B.R. 112, 2003 WL 21516983 (10th Cir. B.A.P. June 30, 2003)...................28

*In re Essar Steel Minnesota LLC*,
   2024 WL 4047451 (Bankr. D. Del. Sept. 4, 2024) ...............................................13

*Georgelas v. Desert Hill Ventures, Inc.*,
   45 F.4th 1193 (10th Cir. 2022) ............................................................................24

*Giuliano v. Fleming (In re Nobilis Health Corp.)*,
   No. 21-51183 (Bankr. D. Del. Jul. 27, 2022), Dkt. No. 75...................................27

*Goodman v. Mead Johnson & Co.*,
   534 F.2d 566 (3d Cir. 1976)..................................................................................25

*Grimes v. Gilbert*,
   1997 WL 33419261 (Bankr. M.D. Ga. Mar. 3, 1997).........................................24

*Halper v. Halper*,
   164 F.3d 830 (3d Cir. 1999)..................................................................................12

*In re HDD Rotary Sales, LLC*,
　499 B.R. 542 (Bankr. S.D. Tex. 2013) ................................................................21

*In re Hechinger Inv. Co. of De.*,
　274 B.R. 71 (D. Del. 2002).................................................................................20

*In re HH Liquidation, LLC*,
　590 B.R. 211 (Bankr. D. Del. 2018) ...................................................................30

*United States v. Hooper*,
　229 F.3d 818 (9th Cir. 2000) ..............................................................................16

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
　458 F.3d 244 (3d Cir. 2006)................................................................................14

*Kelley v. Safe Harbor Managed Account 101, Ltd.*,
　31 F.4th 1058 (8th Cir. 2022) .............................................................................19

*In re Laverdure*,
　399 B.R. 310 (Bankr. N.D. Ill. 2008) .................................................................27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986)............................................................................................10

*United States v. McHan*,
　345 F.3d 262 (4th Cir. 2003) ..............................................................................17

*Mortgage Lenders Network v. Sensenich (In re Potter)*,
　313 F.3d 93 (2d Cir. 2002)..................................................................................16

*In re MTE Holdings LLC*,
　2024 WL 3272224 (Bankr. D. Del. July 1, 2024)...............................................29

*In re Nine W. Sec. LBO Sec. Litig.*,
　482 F. Supp. 3d 187 (S.D.N.Y. 2020)............................................................18, 19

*In re Opp Liquidating Co.*,
　2025 WL 513283 (Bankr. D. Del. Feb. 14, 2025) ..............................................23

*In re OSC 1 Liquidating Corp.*,
　529 B.R. 825 (Bankr. D. Del. 2015)....................................................................26

*United States v. Parcel of Land*,
　507 U.S. 111 (1993)............................................................................................16

*In re Quorum Health Corp.*,
　2023 WL 2552399 (Bankr. D. Del. Mar. 16, 2023)........................................18, 20

*In re R.M.L., Inc.*,
   92 F.3d 139 (3d Cir. 1996)..................................................................................23

*Ravenswood Inv. Co. v. Estate of Winmill*,
   2018 WL 1410860 (Del. Ch. Mar. 21, 2018)......................................................30

*In re Resorts Int'l, Inc.*,
   372 F.3d 154 (3d Cir. 2004)...............................................................................11

*In re Sanchez Energy Corp.*,
   139 F.4th 411 (5th Cir. 2025) .............................................................................28

*In re Semcrude, L.P.*,
   2010 WL 5140487 (Bankr. D. Del. Dec. 13, 2010).............................................10

*Smallhold, Inc. v. Mountain Meadow Mushroom Farms, Inc. (In re Smallhold, Inc.)*,
   2025 WL 2395029 (Bankr. D. Del. Aug. 18, 2025) ............................................11

*Stoe v. Flaherty*,
   436 F.3d 209 (3d Cir. 2006)................................................................................11

*In re TC Liquidations LLC*,
   463 B.R. 257 (Bankr. E.D.N.Y. 2011)................................................................23

*Thermal Surgical, LLC v. Brown*,
   __ F.4th __, 2025 WL 2263862 (2d Cir. Aug. 8, 2025) ................................14, 15

*United States v. Timley*,
   507 F.3d 1125 (8th Cir. 2007) ............................................................................16

*In re Tribune Co. Fraudulent Conveyance Litig.*,
   946 F.3d 66 (2d Cir. 2019).............................................................................19, 20

*United States v. U.S. Currency in the Amount of $228,536.00*,
   895 F.2d 908 (2d Cir.1990).................................................................................16

*Wellness Int'l Network, Ltd. v. Sharif*,
   575 U.S. 665 (2015)............................................................................................13

*Wells Fargo Bank, N.A. v. Est. of Malkin*,
   278 A.3d 53 (Del. 2022) .....................................................................................28

*Zirn v. VLI Corp.*,
   681 A.2d 1050 (Del. 1996) .................................................................................26

## Statutes and Codes

Delaware Code
  Section 1304(a)(2) ............................................................................................20
  Section 1309................................................................................................25
  Section 8106................................................................................................30

United States Code
  Title 11, Section 101(22)(A)..........................................................................19
  Title 11, Section 101(49)(A)..........................................................................18
  Title 11, Section 157 ................................................................................10, 12
  Title 11, Section 544 ..........................................................................16, 17, 25
  Title 11, Section 546(a)..................................................................................25
  Title 11, Section 548 ..........................................................................16, 17, 25
  Title 11, Section 548(a)(1)..............................................................................25
  Title 11, Section 548(a)(1)(B)........................................................................20
  Title 11, Section 548(a)(2)..............................................................................13
  Title 11, Section 550(d) ..................................................................................28
  Title 11, Section 741(7) ..................................................................................18
  Title 11, Section 741(8) ..................................................................................18
  Title 21, Section 853(c)...................................................................................16
  Title 28, Section 157(a)...................................................................................10
  Title 28, Section 157(c)(1)..............................................................................12
  Title 28, Section 1334(b) ...............................................................................10

Delaware Uniform Fraudulent Transfer Act....................................................................9

Exchange Act
  Section 10(b)....................................................................................................8
  Section 21F .....................................................................................................8

Securities Act
  Section 17(a) ....................................................................................................8

## Rules and Regulations

Federal Rule of Bankruptcy Procedure
  Rule 7056........................................................................................................9

Federal Rules of Civil Procedure
  Rule 56.................................................................................................9, 13, 14
  Rule 56(a)........................................................................................................9

Defendant Adam P. Rogas respectfully submits this memorandum of law, together with the accompanying Declaration of Adam P. Rogas ("Rogas Decl.") and Objection to the Declaration of Timothy Daileader ("Obj."), in opposition to the Plan Trustee's Motion for Summary Judgment ("Motion," Dkt. No. 23).

### PRELIMINARY STATEMENT

Mr. Rogas committed securities fraud. He openly acknowledges this and has consistently and unequivocally accepted responsibility. He has also been punished—significantly—by the United States for his conduct. In October 2022, Mr. Rogas pled guilty to securities fraud charges brought by the Department of Justice (the "DOJ"), and was sentenced to sixty months in prison, ordered to pay the victims of his misconduct more than $123 million in restitution, and ordered to pay a $17.5 million money judgment. Mr. Rogas has forfeited ownership of any substitute property assets of value traceable to him. Mr. Rogas has also entered into a Consent Judgment in the parallel civil action brought by Securities and Exchange Commission (the "SEC"), requiring that he disgorge $17.5 million and pay approximately $90,000 in interest.

Mr. Rogas has already forfeited the funds the Trustee seeks to recover from him as fraudulent transfers and remains subject to enormous restitution obligations. Mr. Rogas will doubtless carry the heavy financial burden of his misconduct for the rest of his life. He is currently making payments in accordance with a schedule established by the government, and those payments will go to the victims of his crime: the same individuals and entities who are beneficiaries of the Trustee's action here.

The damages the Trustee seeks to recover here are entirely duplicative of the amounts Mr. Rogas has already agreed to pay and has been paying in forfeiture and restitution. Despite those agreements, the Trustee seeks judgment as a matter of law on more than $150 *million* in damages and attempts to use the criminal and civil judgments against Mr. Rogas to obtain complete relief on all its claims without having to make any evidentiary showing whatsoever.

Mr. Rogas accepts responsibility for his conduct, but that does not give the Trustee license to claim, *ipso facto*, a complete victory as a matter of law in this bankruptcy proceeding without having to prove its case. The Trustee's motion for summary judgment fails for several reasons:

***First***, this Court lacks subject matter jurisdiction over the Trustee's state law causes of action. Nor can this Court enter a final judgment on the Trustee's state law claims. Likewise, this Court lacks authority to enter a final judgment on the Trustee's statutory claims for fraudulent transfer.

***Second***, the Trustee's motion is, in essence, a *sub rosa* attempt at offensive, non-mutual preclusion. The Trustee's motion is supported by precious little evidence. The Trustee took no discovery in this case. Instead of developing its own factual record, the Trustee asks this Court to take Mr. Rogas' guilty plea to a single count of securities fraud (plus the declaration of a restructuring professional with no personal knowledge of the facts he attempts to establish, littered with vitriolic statements, conclusions of law, and what are essentially solvency opinions that the declarant is not qualified to offer) and find, as a matter of law, that Mr. Rogas is liable for more than $150 million in damages. That is not how any of this works. Mr. Rogas is entitled to have a jury determine liability based on evidence presented at trial. Summary judgment, especially on the factual record presently before the Court, is improper.

***Third***, many of the transfers the Trustee seeks to avoid are, as a matter of law, not avoidable. As mentioned above, Mr. Rogas is subject to a criminal forfeiture order. Because of that, title to the proceeds of Mr. Rogas' criminal activity vested in the United States' government at the time of the crime. By operation of law, these proceeds, including at least the Tender Offer Proceeds (defined below) which the Trustee seeks to avoid, were _never_ part of the bankruptcy estate and _never_ transferred to Mr. Rogas. Neither the Debtor nor Mr. Rogas ever had any vested interest in them.

2

*Fourth*, as for the Employment Proceeds (defined below), the Trustee has not met its burden to show that Mr. Rogas' salary or bonuses were inflated or made in bad faith because the Trustee has not established that Mr. Rogas contributed no value to his company, NS8 Inc. ("NS8") in exchange. That, too, prevents summary judgment on the Trustee's fraudulent transfer claims.

*Fifth*, the Trustee's section 548 constructive fraudulent transfer claim, its section 544 intentional and constructive fraudulent transfer claims, and its common law claims, to the extent predicated on the Tender Offer, are all barred by section 546(e)'s safe harbor for securities transactions.

*Sixth*, a portion of the Trustee's claims (both statutory and common law) fall outside the relevant limitations period. The Trustee's section 548 claims are subject to a two-year limitations period, its section 544 claims are subject to a four-year limitations period, and its remaining state law claims are subject to a three-year limitations period. The Trustee's motion fails to establish when its claims for the Employment Proceeds accrued, or that they are timely.

*Seventh*, the Trustee's fraud and unjust enrichment claims fail because the Trustee has not shown (and cannot show) that NS8—the entity the Trustee represents—was defrauded or impoverished by Mr. Rogas' actions.

*Eighth*, the Trustee's purported damages calculation is rife with legal infirmities. The Trustee claims damages for shares of stock NS8 sold since its inception, as well as all of the salary and benefits Mr. Rogas ever received from the company. The Trustee fails to account for the government's recovery under the restitution and forfeiture orders *and* the more than $40 million in funds collected on behalf of the NS8 estate over the past five years, which reduce, on a dollar-for-dollar basis, Mr. Rogas' potential liability.

In sum, the Trustee's motion should be denied in its entirety. This Court should deny the Trustee's summary judgment motion because, to the extent such claims are not precluded as a matter of law, Mr. Rogas is entitled to a trial, and the Trustee is required to establish the facts on which the Trustee bases its claims.

**FACTUAL BACKGROUND**

**A.     Mr. Rogas Founds NS8.**

Mr. Rogas was one of several individuals who founded NS8 in 2016. Rogas Decl. ¶ 4. He served as the company's President and Chief Executive Officer until his resignation on September 1, 2020. Rogas Decl. ¶ 2. Prior to founding NS8, Mr. Rogas created and ran several other successful software companies, and he had extensive experience and abilities in software development, including content management, e-mail and large file delivery, and website analytics. *United States v. Rogas*, 20-cr-00539-JPC (S.D.N.Y. 2020) (the "DOJ Matter"), Dkt. No. 67-1 at 3.

The concept of NS8 was to build a scalable e-commerce anti-fraud detection platform for use by individual merchants and large e-commerce vendors such as Shopify. Rogas Decl. ¶ 5. NS8's business model was based on using predictive analytics and real-time scoring to analyze web traffic and detect fraud in real time at the merchant level. Rogas Decl. ¶ 6. Mr. Rogas and his co-founders perceived a market need, especially among smaller merchants who used platforms like Shopify and lacked the resources to implement enterprise-grade fraud detection tools. Rogas Decl. ¶ 7. NS8 partnered with platforms like Shopify and Magento (Adobe) to make its software available through their marketplaces, giving small merchants frictionless access to fraud protection tools. Rogas Decl. ¶ 8.

During the company's formation and early years, Mr. Rogas worked to build NS8 from the ground up so that it could reach commercial viability. *See* Rogas Decl. ¶¶ 9, 14; DOJ Dkt. No. 67-1 at 5. NS8's initial software was a collaborative effort between Mr. Rogas and one of his co-

4

founders. Together, they built an analytics product by adapting an existing platform that was already in use with live customers. Rogas Decl. ¶ 9. This technology eventually became NS8's fraud detection software. *Id*. Indeed, Mr. Rogas is a talented software programmer and was heavily involved in creating the intellectual property backbone of NS8's software products. Rogas Decl. ¶ 10; DOJ Dkt. No. 67-1 at 5-6. By way of example, Mr. Rogas is the sole inventor of two patented methods of fraud detection, which directly informed NS8's core detection stack. Rogas Decl. ¶ 10.

Under Mr. Rogas' leadership, NS8 grew and expanded—from six co-founders to an international company employing more than 200 people and offices in four different countries. Rogas Decl. ¶ 11; DOJ Dkt. No. 67-1 at 5. As CEO, Mr. Rogas worked around the clock to support NS8's operations and product delivery, and worked to solve key technical, operational, financial, and strategic challenges. Rogas Decl. ¶ 14; DOJ Dkt. No. 67-1 at 5-6. He managed NS8's employees, including engineers, sales and marketing staff, support teams, and administrative personnel responsible for delivering NS8's services and supporting a large merchant base across multiple ecosystems. Rogas Decl. ¶ 12.

NS8 was a viable concept and company: it had paying customers, generated revenue, and sold a real commercial product that generated a significant amount of investor interest. *See* Rogas Decl. ¶¶ 13, 15. NS8 raised several rounds of investor capital to finance its operations, including $9,000,000 from at least ten accredited investors via several early seed rounds, and $11,000,000 in a funding round that occurred in early 2019. *See* Rogas Decl. ¶ 13, 15-18. In fact, NS8's first day pleadings recognized NS8's legitimate business activities:

> The Debtor is a cyberfraud prevention company that develops and sells electronic tools to help online vendors assess the fraud risks of customer transactions . . . The Debtor's business verticals include: (i) safeguarding online businesses against advertising fraud, transaction fraud, and poor site performance; (ii) protecting against threats; and (iii) offering better insight into real customers by utilizing behavioral analytics, real-time user scoring, and global monitoring . . . NS8 was co-founded in

5

> 2016 by [Mr. Rogas] and five (5) others with the guidance and assistance of Mach37, a Tysons Virginia based start-up accelerator designed to facilitate the creation of the next generation of cyber product companies. At the outset, NS8 operated like many other prototypical technology start-ups, relying on the sweat equity of its co-founders and the seed investment of friends, family, and a few angel investors.

Bankr. Dkt. No. 9 (the "Wikel Declaration") ¶ 9-10.

Despite all of this, the Trustee alleges that NS8 was a hoax from day one. Compl. ¶ 15 (describing NS8's "purported business"). The Trustee also alleges that Mr. Rogas inflated revenue and customer numbers from NS8's inception. *See, e.g.*, Compl. ¶ 17-21; Mot. at 2-3. But Mr. Rogas did not begin to falsify or artificially inflate customer or revenue numbers before 2019. Rogas Decl. ¶ 19. Nowhere in its motion does the Trustee point to any actual evidence to the contrary. *Contra* Mot. ¶ 8 (claiming that "Rogas admitted he falsified the customer data he and NS8 gave to its investors *throughout the entirety of NS8's pre-petition existence . . .*" (emphasis added)). Nothing in the DOJ's Indictment to which Mr. Rogas pled guilty suggests that Mr. Rogas began to falsify NS8 records before 2019 (*See* DOJ Dkt. Nos. 1, 7), and no such facts were ever established in the SEC Matter. *S.E.C. v. Rogas*, 20-cv-7628 (S.D.N.Y. 2020) (the "SEC Matter"), Dkt. No. 216. The Trustee cannot point to any evidence that NS8's initial fundraising was illegitimate.

By 2019, however, things changed. NS8's attempts to raise additional investor capital were accompanied by closer investor scrutiny and more comprehensive due diligence demands, which led Mr. Rogas to falsify company records. Rogas Decl. ¶ 19; DOJ Dkt. No. 67-1 at 5-6. Mr. Rogas resigned from NS8 on September 1, 2020. Rogas Decl. ¶ 20. Mr. Rogas still believed that NS8 was a viable concept and that, if proper steps were taken, it could be salvaged. Rogas Decl. ¶ 21. Through counsel, Mr. Rogas reached out to NS8's leadership to offer assistance to help save the company. *Id.* Specifically, Mr. Rogas offered: (i) to help facilitate an orderly leadership transition; (ii) to advise NS8 of recent rewrites Mr. Rogas had undertaken to critical components of NS8's software product to fix fundamental deficiencies and ensure such efforts continued; (iii) to help external messaging

6

by emphasizing recent exclusive marketing partnerships; and (iv) to collaborate with the Board of Directors and corporate leadership to take decisive action to reset the company, cut costs, and restructure. *Id.* Mr. Rogas' offer was rejected. Rogas Decl. ¶ 22. Shortly thereafter, NS8 fired nearly all its employees, declared bankruptcy, and sold the company's assets in a fire sale. Rogas Decl. ¶ 23; DOJ Dkt. No. 67-1 at 5-6. Today, multiple companies exist that offer similar fraud detection tools and operate within the same Shopify and e-commerce ecosystems, many of them utilizing approaches strikingly similar to what NS8 pioneered. Rogas Decl. ¶ 24.

### B.   The DOJ Matter.

On September 14, 2020, the DOJ filed a three-count criminal complaint charging Mr. Rogas with one count of securities fraud, one count of fraud in the offer or sale of securities, and one count of wire fraud. DOJ Dkt. No. 1. He was indicted on these charges on October 13, 2020. DOJ Dkt. No. 7. The scope of alleged conduct began in 2019 and ran into September of 2020. *See, e.g., id.* ¶ 3. Less than two years later, Mr. Rogas pled guilty to one count of securities fraud. DOJ Dkt. No. 80 at 1. Mr. Rogas admitted to having committed fraudulent activity in 2019 and 2020 in connection with two rounds of fundraising conducted by NS8 during that same period, through which NS8 raised approximately $123 million. DOJ Dkt. No. 7 ¶ 3.

As Mr. Rogas explained to the court, he accepted "full responsibility for [his] inexcusable conduct," and had misrepresented the number of NS8's total number of paying customers and revenues because he felt like it was a "necessary action to keep the company going, to keep 300 people employed, [and] to preserve value for the investors." DOJ Dkt. 67 at 9, 12. Stated differently by Mr. Rogas himself, his "misplaced intent was to afford the company, [his] colleagues and team members – which [he] truly believed in – the time needed to generate enough revenue to sustain, grow, and support the hundreds of jobs" at NS8. DOJ Dkt. No. 59 at 21. Mr. Rogas had "no doubt" that given time, "NS8 would be very successful and innovative, and that it would both produce the

promised returns and benefits for its investors and employees and continue to provide significant cybersecurity value and protection to its customers." *Id*. Of course, as Mr. Rogas appreciates, his misconduct led to the opposite result: "the demise of a promising company" and his "entire international team of over 300 employees lost their jobs[.]" DOJ Dkt. 67-1 at 1.

Mr. Rogas was sentenced to sixty months of custodial incarceration and ordered to pay his victims more than $112 million in restitution. *See* DOJ Dkt. Nos. 80; 93. He has forfeited all rights to any and all property to his name. DOJ Dkt. Nos. 92, 93, 98.

### C.   The SEC Matter.

The SEC filed a parallel civil enforcement action, which was stayed pending resolution of the DOJ Matter. SEC Dkt. No. 49. The stay remained in place for nearly two years until the court partially lifted the stay, allowing the SEC to file an Amended Complaint, which added some additional allegations and claims against Mr. Rogas, primarily concerning his alleged wrongful termination of a former NS8 employee. SEC Dkt. No. 79 ¶¶ 56-71.

Mr. Rogas engaged with the SEC to resolve its civil claims amicably. Pursuant to an agreed judgment, Mr. Rogas consented to a permanent injunction enjoining him from violating the securities laws, including section 10(b) of the Exchange Act, section 17(a) of the Securities Act, and section 21F of the Exchange Act. *See* SEC Dkt. No. 216. Mr. Rogas also consented to disgorge $17,542,459.00, to be satisfied from his criminal restitution obligations, as well as $89,150 in prejudgment interest. *Id*.

Neither the Consent nor the Judgment entered by the Court establish the allegations in the Amended Complaint as admitted facts. *See* SEC Dkt. No. 216 at 4. And Mr. Rogas expressly protected his "right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party." SEC Dkt. No. 211 at 6.

8

**D.      Bankruptcy Proceedings.**

NS8 filed for chapter 11 relief on October 27, 2020 (the "Petition Date"). On March 11, 2022, the Court entered an order confirming a liquidating plan. Bankr. Dkt. No. 723. The Plan became effective on April 13, 2022. Bankr. Dkt. No. 706. Since November of 2020, the estate of NS8 has brought in "over forty million dollars." Bankr. Dkt. No. 727 at 10. As of March 31, 2025, $23,538,457 in recovered funds had been paid out to general unsecured claimholders. Bankr. Dkt. No. 893 at 7. Another $531,763 was paid out to priority claims, and $17,861,867 in recovered funds had been paid to outside counsel and to fund the litigation trust. *Id.* at 2, 10.

On October 28, 2024, the Plan Trustee filed its Complaint (Dkt. No. 1, the "Complaint") against Mr. Rogas. The Trustee broadly alleges that NS8 was a sham from day one, built on nothing more than Mr. Rogas' misrepresentations. Compl. ¶¶ 15, 17-21. The Trustee claims damages exceeding $150 million and seeks to recover every cent ever paid to Mr. Rogas in whatever form from the day the company opened its doors. *See, e.g.* Compl. ¶¶ 122-27. The Complaint alleges statutory claims arising under the Bankruptcy Code, the Delaware Uniform Fraudulent Transfer Act, and Delaware common law.

The Trustee has not conducted discovery in this litigation. It did not depose Mr. Rogas. It did not seek written admissions or interrogatories from Mr. Rogas. Rather, it has moved for summary judgment on all its claims on the basis of little more than the fact that Mr. Rogas pleaded guilty to criminal securities misconduct in the DOJ Matter.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's

function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Ultimately, the Court must assess the record evidence and determine whether it would permit a reasonable finder of fact to rule in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

## ARGUMENT

### I. This Court Lacks Subject Matter Jurisdiction over the Trustee's State Law Claims and Lacks Authority to Enter a Final Order on Any of the Trustee's Claims

The Trustee's complaint and summary judgment motion start from a flawed premise: that this Court is the correct one to resolve this dispute. It is not. This Court lacks subject matter jurisdiction over the Trustee's common law claims *and* the authority to enter a final judgment on them. This Court also lacks authority to enter final judgment on the Trustee's statutory claims. The state law claims must be dismissed; the statutory claims should be withdrawn to the district court.

#### A. This Court lacks jurisdiction over the Trustee's common law claims.

Section 1334 provides the three bases of bankruptcy jurisdiction: "civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added).[1] The Trustee cannot credibly contend that his common law claims arise under title 11 or

---

[1] Section 157, discussed below, allows the district courts to refer proceedings falling under section 1334 (and only those proceedings) to the bankruptcy courts. *See* 28 U.S.C. § 157(a); *In re Semcrude, L.P.*, 2010 WL 5140487, at *18 (Bankr. D. Del. Dec. 13, 2010).

10

arise in a case under title 11.[2] So, the jurisdictional analysis turns on whether the common law claims relate to the bankruptcy case. Whether a proceeding relates to a bankruptcy case varies depending on whether it is commenced pre- or post-confirmation. Before confirmation, bankruptcy courts have jurisdiction to hear a proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 164 (3d Cir. 2004) (quotation omitted).

After confirmation, however (as the case is here), the "essential inquiry" is "whether there is a close nexus to the bankruptcy plan." *Id.* at 166. For example, post-confirmation "related to" jurisdiction may exist where the court is "required to construe and enforce provisions of the [p]lan" or "the plan's accompanying documents." *Id.* at 167-68 (citation omitted). In contrast, jurisdiction does not exist where "the dispute would have had no impact on any integral aspect of the bankruptcy plan or proceeding" or where "[t]he only nexus to th[e] bankruptcy case is that the plaintiff . . . is a liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of reorganization." *Id.* at 168 (citations omitted). "Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization" or "in a confirmation or other order." *Id.* at 161.

The Trustee, here, asks for summary judgment on state law claims (against a non-debtor) for breach of fiduciary duty, fraud, and unjust enrichment. But this Court has no jurisdiction over those claims. *See, e.g.*, *id.*; *Smallhold, Inc. v. Mountain Meadow Mushroom Farms, Inc. (In re Smallhold, Inc.)*, 2025 WL 2395029 (Bankr. D. Del. Aug. 18, 2025) (no post-confirmation related to jurisdiction over state law claims); *BWI Liquidating Corp. v. City of Rialto (In re BWI*

---

[2] A proceeding "arises under" title 11 if "the Bankruptcy Code creates the cause of action or provides the substantive right invoked." *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006) (quotation omitted). Proceedings "arise in" a bankruptcy case, "if they have no existence outside of the bankruptcy." *Id.* (quotation omitted). The Trustee's common law claims do not derive from the Bankruptcy Code, and they certainly exist outside of bankruptcy.

11

*Liquidating Corp.)*, 437 B.R. 160, 164-68 (Bankr. D. Del. 2010) (no post-confirmation related to jurisdiction over state law claims). Without jurisdiction over the Trustee's state law claims, this Court cannot grant summary judgment on them; indeed, it is compelled to dismiss, withdraw, or transfer them.

**B.    This Court lacks authority to enter a final judgment on any of the Trustee's claims.**

Section 157 allocates authority to enter final orders between the bankruptcy court and the district court, depending on whether the matter is "core" or "non-core." 11 U.S.C. § 157. A proceeding is core if: (a) it is expressly enumerated in section 157(b); (b) it invokes a substantive right provided by title 11; or (c) it is a proceeding, that by its nature, could only arise in the context of a bankruptcy case. *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). "Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." *Id.* at 837.

*As to the common law claims*, and for the same reasons above, the Trustee's state law claims are certainly not core. They do not invoke a substantive right provided by the Bankruptcy Code, nor could they only arise in a bankruptcy case (i.e., they do not arise under title 11 or arise in a case under title 11). At best, then, the Trustee's common law claims are "non-core." But they are not, because the claims do not relate to the bankruptcy case post-confirmation. Consequently, this Court's adjudicatory power is limited to hearing the dispute and submitting proposed findings of fact and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1).

*As to the statutory claims*, this Court does have subject matter jurisdiction (they "arise under" title 11). And the statutory claims are "core," enumerated in section 157(b). However, this Court lacks authority to enter a final judgment on them. As this Court aptly explained:

> Although fraudulent conveyance suits are designated by statute as "core proceedings,"
> the Supreme Court held in *Granfinanciera v. Nordberg* that a party's "right to recover

12

a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems . . . more accurately characterized as a private rather than a public right." And the Court in *Stern v. Marshall* held that bankruptcy courts may not enter final judgment on matters of private right, which is to say that as far as Article III goes, such matters may not be treated as core matters. Accordingly . . . the Court would not be able to enter final judgment on the fraudulent conveyance claim absent the consent of both parties.

*Drivetrain, LLC v. DDE Partners, LLC (In re Cyber Litigation Inc.)*, 2023 WL 6938144, at *4 (Bankr. D. Del. Oct. 19, 2023) (internal citations omitted).

Unlike *DDE Partners*, however, Mr. Rogas neither filed a proof of claim in the bankruptcy case nor otherwise consented to this Court's jurisdiction over the Trustee's fraudulent conveyance claims. Quite the opposite. Mr. Rogas has affirmatively stated that he *does not* consent to the entry of final orders or judgments by the Court in this matter.[3] Dkt. No. 7 ¶ 8. Mr. Rogas has also demanded a jury trial. *Id.* at 25. This Court, thus, is unable to enter a final judgment on the Trustee's fraudulent conveyance claims.[4]

Because the Court lacks subject matter jurisdiction over the Trustee's common law claims and lacks authority to enter a final order on any of the Trustee's claims, Mr. Rogas submits that it should deny summary judgment altogether and either dismiss the case as improvidently filed in this Court or transfer the case to a court that has jurisdiction and the authority to enter final orders.

## II.     The Trustee Fails Its Burden of Proof; the Summary Judgment Motion Is a Flawed *Sub Rosa* Attempt at Offensive, Non-Mutual Preclusion.

The Court should deny the Trustee's motion because the Trustee does not even attempt, let alone satisfy, its obligations under Rule 56. Instead, it asks the Court to convert civil allegations

---

[3]   The Trustee has not provided any undisputed facts that Mr. Rogas otherwise consented to this Court's ability to resolve the fraudulent transfer claims. Even if it had, "reaching that determination would require a deeply factbound analysis" of Mr. Rogas' conduct. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015). That type of "deeply factbound" inquiry is not appropriate at the summary judgment stage.

[4]   The Trustee seeks summary judgment on all its claims. Mot. ¶ 43. An order granting the Motion would thus not be interlocutory. *Cf. In re Essar Steel Minnesota LLC*, 2024 WL 4047451, at *8 (Bankr. D. Del. Sept. 4, 2024).

13

and Mr. Rogas' guilty plea into a judgment of more than $150 million in a plainly impermissible attempt at offensive non-mutual preclusion. The Court should deny the motion on this basis alone.

The Trustee took no discovery in this matter. The Trustee did not depose Mr. Rogas, nor seek written admissions of fact. The Trustee did not serve any interrogatories, request documents, or engage in any third-party discovery. The only information developed in this case on which the Trustee relies is a *pro forma* declaration (to which Mr. Rogas objects) and a handful of documents that are, at most, of marginal relevance at this stage. Such a meager effort comes nowhere close to satisfying Rule 56's requirements.

Rather than developing testimony and evidence through discovery, the Trustee relies—almost entirely—on the now-resolved SEC and DOJ matters. Neither remedy the motion's glaring factual shortcomings. To begin, no facts were established in the SEC Matter, either by the fact finder or by stipulation of the parties. In fact, Mr. Rogas' consent specifically states that he does *not* admit the facts alleged in the Amended Complaint and expressly protects his right to take contrary positions in *other* legal proceedings—such as this one. SEC Dkt. No. 211 at 16, 216 at 4. The Trustee is thus asking the Court to convert *allegations* in another legal proceeding into a judgment here, which is plainly improper.

So, too, is the Trustee's reliance on the DOJ Matter. By simultaneously arguing that Mr. Rogas cannot contest liability in this case *and* that the Trustee is entitled to judgment solely on the basis of the DOJ Matter, the Trustee abuses the doctrine of claim preclusion by seeking non-mutual, offensive preclusion. As the Second Circuit very recently recognized, there are "serious doubts about whether claim preclusion can *ever* apply offensively, but . . .[a]t a minimum, claim preclusion cannot apply offensively where its application would be unfair[.]" *Thermal Surgical, LLC v. Brown*, __ F.4th __, 2025 WL 2263862, at *4 (2d Cir. Aug. 8, 2025); *see also Jean*

*Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3d Cir. 2006) ("[T]he application of non-mutual offensive collateral estoppel presents a unique potential for unfairness . . . ."). And, just as in *Thermal Surgical,* allowing the Trustee to secure a judgment through offensive, non-mutual preclusion would be patently unfair.

To begin, the Trustee's claims are very different than those claims asserted by DOJ (criminal) and the SEC (civil enforcement). So too is Mr. Rogas' motivation to defend himself, particularly when the Trustee seeks more than $150 million in damages and claims (incorrectly) that every cent NS8 ever paid Mr. Rogas is a fraudulent transfer. *See Thermal Surgical*, 2025 WL 2263862, at \*7. And, importantly, Mr. Rogas' defense against the Trustee's claims here is *not* a collateral attack on either the Government's criminal or civil judgments. *See id.* at \*8. Moreover, the equities—on this point—strongly favor Mr. Rogas. Mr. Rogas' "debt" is already owed twice over. The United States secured a $17.5 million money judgment (in two cases), and Mr. Rogas owes more than $112 million in restitution. One wonders why the Trustee is trying to collect through a civil judgment here. Simply put, the Trustee cannot secure summary judgment solely on the basis of offensive non-mutual preclusion.[5]

## III.    The Trustee Fails to Establish Entitlement to Summary Judgment on the Statutory Claims.

### A.    The Trustee has not established a voidable transfer of estate property to Mr. Rogas.

The Trustee's summary judgment motion identifies two broad categories of transfers it seeks to avoid: (a) $17,542,458.50 of "Tender Offer Proceeds"; and (b) $829,755.25 of

---

[5]    What is more, even if the Trustee could use Mr. Rogas' plea in such a manner (it may not), the conduct pleaded to was limited to 2019 and 2020. *See* DOJ Dkt. No. 7. Moreover, Mr. Rogas disputes the Trustee's allegation that misconduct occurred prior to 2019. Rogas Decl. ¶ 19.

15

"Employment Proceeds."[6] The Trustee has failed to show that the funds transferred were "property of the debtor" or "an interest of the debtor in property" as required by sections 544 and 548, respectively. *See Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.),* 318 B.R. 276, 282 (Bankr. S.D.N.Y. 2004) ("A trustee can only avoid and recover 'property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.'") (quoting *Begier v. I.R.S.,* 496 U.S. 53, 58 (1990)). State law determines the extent of the debtor's interest in property, absent an overriding federal policy. *Butner v. United States,* 440 U.S. 48, 55 (1979). If the transfer did not involve property of the debtor under non-bankruptcy law, the trustee cannot avoid and recover the transfer or its value. *See, e.g.*, *Mortgage Lenders Network v. Sensenich (In re Potter)*, 313 F.3d 93, 94 (2d Cir. 2002) (trustee cannot avoid transfer of foreclosed real property).

Here, the Trustee seeks to recover funds that are subject to criminal forfeiture. Under the "relation back" doctrine, title to property that is subject to forfeiture—such as those at issue here—automatically vests in the government at the time of the defendant's criminal act. *See* 21 U.S.C. § 853(c); *United States v. Parcel of Land,* 507 U.S. 111, 128-29 (1993). "The proceeds of an offense do not exist before the offense is committed, and when they come into existence, the government's interest under the relation-back doctrine immediately vests." *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007) (citing *United States v. Hooper,* 229 F.3d 818, 821-22 (9th Cir. 2000)); *see also United States v. U.S. Currency in the Amount of $228,536.00,* 895 F.2d 908, 916 (2d Cir.1990) (defendant has no interest in forfeited property from the time crime is committed).

---

[6]   The Trustee expressly disclaims seeking summary judgment on some $4,497,500 of "Other Transfers," but those claims are plagued by the same issues set forth in this opposition. Mot. at 15 n. 11.

16

The Trustee seeks to avoid and recover some $17.5 million in the form of the Tender Offer Proceeds and some $800,000 in the form of the Employment Proceeds.[7] But, as the Trustee admits, those same funds have already been subject to criminal forfeiture by the government. Dkt. No. 1 at 39. Because of that, title to these funds vested in the government at the moment of Mr. Rogas' crime and, consequently, never vested in the Debtor's estate. Those funds, then, cannot be "property of the debtor" or "an interest of the debtor in property," nor can they have been "transferred" to Mr. Rogas as required by sections 544 and 548. 11 U.S.C. §§ 544, 548. The Trustee cannot recover them from Mr. Rogas. *See In re Dreier LLP*, 452 B.R. 391, 411 (Bankr. S.D.N.Y. 2011) (forfeiture and relation back doctrine can divest bankruptcy estate of property); *In re Am. Basketball League, Inc.*, 317 B.R. 121, 128–29 (Bankr. N.D. Cal. 2004); *DDE Partners, LLC*, 2023 WL 6938144, at *5 ("[W]hile the Bankruptcy Code allows a trustee to recover property that was fraudulently transferred out of the estate, fraudulent conveyance law cannot be used to recover funds that were never part of the estate.").

The Trustee's motion for summary judgment on the fraudulent transfer claims—both intentional and constructive—fails because the Trustee has not (and cannot) show that the transfers it seeks to avoid were property of the Debtor's estate or that the transfers were made to Mr. Rogas. By operation of law and the criminal forfeiture, title to the property the Trustee seeks to recover never vested in either the Debtor or Mr. Rogas—at all times it was vested in the government.

---

[7]  To the extent the Trustee may assert the Employment Proceeds are "substitute assets," it has also failed to establish what portion of the forfeiture obligation for the Tender Offer Proceeds is being satisfied by them. And, regardless, the government's title to the substitute assets vests, at the very latest, at the time of indictment. Under no circumstances, then, did title to Mr. Rogas' substitute assets vest in the government after the NS8 filed its bankruptcy petition. *See United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003) (forfeiture of substitute property relates back to the date of the acts giving rise to the forfeiture); *In re Dreier LLP*, 452 B.R. 391, 411 (Bankr. S.D.N.Y. 2011) ("The relation-back doctrine can divest a bankruptcy estate of its property even though the estate was created *before* the forfeiture order was entered.").

17

**B.    The Trustee's section 548 constructive fraud, section 544, and unjust enrichment claims are barred because the section 546(e) safe harbor protects the Tender Offer Proceeds transfer from avoidance.**

Section 546(e) provides, in relevant part: "[T]he trustee may not avoid . . . a transfer made by or to (or for the benefit of) a . . . financial institution . . . in connection with a securities contract . . . except under section 548(a)(1)(A)." The safe harbor applies where: "(1) there is a *qualifying transaction* (*i.e.*, there is a 'settlement payment' or a 'transfer payment . . . made in connection with a securities contract') and (2) there is a *qualifying participant* (*i.e.*, the transfer was 'made by or to (or for the benefit of) a . . . financial institution')." *In re Nine W. Sec. LBO Sec. Litig.*, 482 F. Supp. 3d 187, 197 (S.D.N.Y. 2020) (emphasis in original). The safe harbor applies here.

***The Tender Offer is a qualifying transaction****. A "settlement payment" is "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). A "securities contract" includes "a contract for the purchase, sale or loan of a security" and "any other agreement or transaction that is similar." 11 U.S.C. § 741(7). A "security" includes a "note," "stock," "transferable share," or "other claim or interest commonly known as 'security.'" 11 U.S.C. § 101(49)(A).

There is no dispute that the Tender Offer included a settlement payment made in connection with a securities contract—the repurchase of NS8 shares. *See, e.g.*, Mot. ¶ 15 (defining the "Tender Offer" as a "repurchase [of] shares of [NS8's] stock"); *id.* ¶ 23 ("Settlement payments to the tendering shareholders were made on or about June 23, 2020."). The Tender Offer, thus, is a qualifying transaction. *See, e.g.*, *In re Quorum Health Corp.*, 2023 WL 2552399, at *5 (Bankr. D. Del. Mar. 16, 2023) ("cash proceeds" exchanged for "outstanding capital stock or other equity interests" constitute a qualifying transaction); *In re Nine W. Sec. LBO Sec. Litig.*, 482 F. Supp. 3d

18

at 197-99 (payments made to shareholders for the redemption of shares constitute a qualifying transaction).

*NS8 is a qualifying participant.* While section 546(e) looks to the "overarching transfer" and "does not protect transfers in which financial institutions served as mere conduits," it *does* protect transfers where a "financial institution" served as the transferor's "customer" or "agent." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 75, 77-80 (2d Cir. 2019); *Kelley v. Safe Harbor Managed Account 101, Ltd.*, 31 F.4th 1058, 1065 (8th Cir. 2022); *Nine W. LBO Sec. Litig.*, 482 F. Supp. 3d at 202-03; *In re Bos. Generating LLC*, 617 B.R. 442, 487-91 (Bankr. S.D.N.Y. 2020).

The transaction at issue here, according to the Trustee, went like this: NS8 → eShares, Inc. DBA Carta, Inc. ("Carta") → Mr. Rogas. NS8's Offer to Purchase designated Carta as the "depository and information agent for the tender offer." Declaration of Timothy Daileader in Support of Plan Trustee's Motion for Summary Judgment ("Daileader Decl."), Dkt. No. 24, Ex. G. NS8 directed the tendering shareholders to register on Carta's website and required all deliveries to be made to the depository on Carta's platform. *Id.* NS8 then funded the Tender Offer by paying Carta, who then remitted payment to Mr. Rogas. Daileader Decl., Ex. J. Carta, in turn, qualifies as a "financial institution" because it is a "trust company" under 11 U.S.C. § 101(22)(A). *See In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d at 78 (entity that served as a "depository" during a tender offer qualified as a "financial institution" because it is a "trust company."). Because Carta served as NS8's agent, and because NS8 was Carta's customer, NS8 likewise qualifies as a "financial institution" under the Bankruptcy Code. 11 U.S.C. § 101(22)(A). And because NS8 falls under the definition of "financial institution" it is, therefore, a "qualifying participant" under section 546(e)'s safe harbor. *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d at 78-80.

19

The Tender Offer transaction qualifies for section 546(e)'s safe harbor. Consequently, the Trustee's claims for constructive fraudulent transfer under section 548, its claims for intentional and constructive fraudulent transfer under section 544, and its claim for unjust enrichment all fail as a matter of law. *See, e.g.*, *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 96 (2d Cir. 2019) (state law fraudulent conveyance claims preempted by section 546(e)); *Contemporaneous Indus. Corp. v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009), abrogated on other grounds by *Merit Mgmt. Grp., LP v. FTI Consulting*, 583 U.S. 366 (2018) (state claims preempted by section 546(e) because "[a]llowing recovery on these claims would render the § 546(e) exemption meaningless, and would wholly frustrate the purpose behind that section"); *Quorum Health Corp.*, 2023 WL 2552399, at *11 ("[T]he safe harbor of § 546(e) preempts the Plaintiffs' ability to pursue avoidance claims under state [] fraudulent transfer law."); *In re Hechinger Inv. Co. of De.*, 274 B.R. 71, 97 (D. Del. 2002) (unjust enrichment claim preempted because "sections 544 and 546(e)[] provide[] an exclusive framework for addressing claims that seek to avoid transfers made more than one year before the bankruptcy").

The Trustee is not entitled to summary judgment on its section 548 constructive fraudulent transfer, its section 544 intentional or constructive fraudulent transfer, or its common law unjust enrichment claims to the extent any of them are premised on the Tender Offer or its proceeds.

C.    **As to the alleged constructively fraudulent transfers, the Trustee has not established that the Debtor was insolvent or that the Debtor received reasonably equivalent value in exchange for the transfers made to Mr. Rogas.**

To obtain summary judgment on its constructive fraudulent transfer claims, the Trustee must show both that NS8 was insolvent at the time it made the subject transfers to Mr. Rogas, and that it received less than reasonably equivalent value in exchange for those transfers. 11 U.S.C. § 548(a)(1)(B); 6 Del. Code § 1304(a)(2). The Trustee has not carried its burden as to either element.

20

As a starting point, questions related to solvency and reasonably equivalent value are inherently fact intensive and, consequently, generally improper for resolution on summary judgment. *See, e.g.*, *In re HDD Rotary Sales, LLC*, 499 B.R. 542, 551 (Bankr. S.D. Tex. 2013) ("A debtor's insolvency at the time of an alleged fraudulent transfer requires a fact-intensive determination based on [the] bankruptcy court's review of [the] debtor's financial records and status at [the] time of transfers."); *Charys Liquidating Tr. v. McMahan Sec. Co., LP (In re Charys Holding Co.)*, 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("[R]easonably equivalent value is a fact intensive determination that typically requires testing through the discovery process."); *In re Centaur, LLC*, 2013 WL 4479074, at *4 (Bankr. D. Del. Aug. 19, 2013) (noting insolvency and reasonably equivalent value are inherently fact intensive). The Trustee has provided <u>zero</u> evidence of NS8's value at any point other than the bare assertions in the Daileader Declaration. *See* Obj. at 3, 5-7 (objecting to claims regarding NS8's share value, solvency, and whether NS8 would have failed early in its existence, as Daileader is not qualified as an expert to render such testimony as admissible evidence).  At this point, and on this record, it is entirely premature for the Court to make either the solvency or the reasonably equivalent value determinations. Summary judgment should be denied.

Further, ***as to the Tender Offer Proceeds***, the Trustee's argument regarding insolvency and lack of reasonably equivalent value are both tied to the untested and unproven assertion that the company itself had no value and therefore the shares NS8 repurchased from Rogas for cash were "*essentially* worthless." Mot. ¶ 71. As to insolvency, the Trustee says NS8's debts exceeded its assets because every investor held a contingent, unliquidated claim against NS8 for fraud for the full value of its investment. Mot. ¶ 76. That hinges on the theory that the NS8 shares the investors purchased had zero value. As to the tender offer proceeds, the Trustee says that NS8 did not receive

21

any value because what it purchased were its own worthless shares. For both insolvency and equivalent value, the Trustee's argument is tied to its assertion that NS8's shares were never worth anything at all.

What the Trustee has not done, however, is produce any competent evidence of the value of NS8's business or its shares. *See* Obj. at 3, 5-7. Indeed, the only evidence in the record is that NS8 was an operating company with a good product and (though overstated after a point) real customers and revenue. The lack of any competent evidence—especially the lack of a true valuation—dooms the Trustee's summary judgment motion. At this stage, and because it produced no evidence of value, the Trustee is not entitled to the presumption of worthlessness it asks the Court to draw in its favor.

"[S]tock in a corporation may have value even though the corporation is insolvent (in the 'balance sheet' sense that its liabilities exceed its assets)." *In re Com. Loan Corp.*, 396 B.R. 730, 744 (Bankr. N.D. Ill. 2008). This is especially true for a start-up like NS8—courts have repeatedly recognized that start-up corporations, which often have little to no income and substantial expenses, cannot be found to be insolvent based on those facts alone. *See In re Adam Aircraft Indus., Inc.*, 510 B.R. 342, 353-54 (10th Cir. B.A.P. 2014), *aff'd*, 805 F.3d 888 (10th Cir. 2015) ("[L]ike many start-ups, had no income and substantial expenses and relied on periodic rounds of equity or debt financing for operating capital . . . That does not demonstrate insolvency, however."); *Baldi v. Samuel Son & Co.*, 548 F.3d 579, 582 (7th Cir. 2008) ("Of course many start-ups fail, but if a significant probability of failure sufficed to pronounce a start-up insolvent, how would any start-up finance its operations? Its trade creditors would fear being trapped by sections 544 or 548 of the Bankruptcy Code when they were paid by the start-up for supplies that they had furnished it. The trustee thinks it a killer point that Longview did not have any operating income when it started

22

up. Well, of course not; no start-up starts with an income flow."). Indeed, the Third Circuit has recognized that investments have value if there is a possibility for them to generate significant value as to the date the risk is taken, even if risk ultimately does not pay off. *In re R.M.L., Inc.*, 92 F.3d 139, 153 (3d Cir. 1996).

Without demonstrating that NS8's stock was actually worthless, the Trustee has not carried its burden to show either that NS8 was insolvent (because the Trustee has not shown that the investors' payments were for nothing) or that, as a matter of law, the Tender Offer Proceeds were exchanged for less than reasonably equivalent value (because the Trustee has not shown that NS8's payment was for nothing).

Further, *as to the Employment Proceeds*, the Trustee has not provided any evidence that Mr. Rogas provided no value to NS8 through his position with the company, and thus, summary judgment is inappropriate. To start, salary payments are presumed to have been made for fair consideration, and as general matter, ordinary salary payments cannot be recovered under a fraudulent transfer theory. *In re Opp Liquidating Co.*, 2025 WL 513283, at \*5 (Bankr. D. Del. Feb. 14, 2025) ("Routine salary payments are presumed to be an exchange of reasonably equivalent value for an employee's services."); *In re TC Liquidations LLC*, 463 B.R. 257, 268 (Bankr. E.D.N.Y. 2011) (trustee faces "tough sledding" to attack employee compensation as fraudulent transfers); *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 2016 WL 4290525, at \*4 (S.D.N.Y. Aug. 11, 2016), *aff'd*, 716 F. App'x 23 (2d Cir. 2017).

There are no facts before the Court suggesting, let alone establishing as undisputed, that Mr. Rogas' compensation was either made in bad faith or excessive in light of his responsibilities as President, CEO, and principal software engineer. Indeed, the Trustee makes almost no effort on this point. The Trustee does not even quantify the salary and benefits it seeks to recoup. Mr. Rogas

23

helped found NS8 in 2016 and built the company for four years. Other than pointing to Mr. Rogas' acceptance of responsibility in the DOJ Matter, the Trustee fails to identify any *facts* supporting its allegations that Mr. Rogas never provided NS8 with legitimate employment services. This alone compels denying summary judgment. *See In re Ballantyne Brands, LLC*, 656 B.R. 117, 164 (Bankr. W.D.N.C. 2023) (salary paid to employee in the ordinary course for four years pre-petition were not fraudulent transfers, as defendants "worked for the Company and were entitled to receive reasonable compensation for their labor"); *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1199 (10th Cir. 2022) (refusing to find salary recoverable as fraudulent transfer, even when employee's function supported fraudulent conduct, where employee conducted other work that preserved the company's net worth). Contrary to the Trustee's assertion, Mr. Rogas had real responsibilities at NS8 and made substantive contributions to the company that provided NS8 with value. *See* Rogas Decl. ¶¶ 9-10, 12-14. Mr. Rogas was principally responsible for creating NS8's technology, real software that the company was actively licensing. Rogas Decl. ¶¶ 9-10, 15-18.

Even if the Trustee had produced some evidence contradicting Mr. Rogas' employment-related contributions to NS8, that would create a fact dispute incapable of resolution at the summary judgment stage. *Grimes v. Gilbert*, 1997 WL 33419261, at \*3 (Bankr. M.D. Ga. Mar. 3, 1997) (even where employee did not provide affidavit in support of argument that her performance was for reasonably equivalent value of salary, finding that "the issue is, by its nature, fact intensive and one inappropriate for disposition on motion for summary judgment").

**D.      Portions of the Trustee's statutory claims are time-barred.**

The Trustee asks for summary judgment on four different fraudulent transfer claims: (a) intentional fraudulent transfer under section 548; (b) constructive fraudulent transfer under section 548; (c) actual fraudulent transfer under section 544 and Delaware law; and (d) constructive fraudulent transfer under section 544 and Delaware law. Dkt. No. 1 at 14-18.

Section 548 provides a two-year lookback period from the date of the chapter 11 petition. 11 U.S.C. § 548(a)(1). The Delaware claims, brought through section 544, are subject to a four-year statute of limitations. 6 Del. Code § 1309.[8] Thus, for the Trustee's claims to be timely, the transfer must have occurred *after* October 27, 2018, for the section 548 claims, or *after* October 27, 2016, for the section 544 claims.

The Trustee, however, provides precious little evidence proving *when* transfer of the Employment Proceeds occurred. The entirety of Trustee's evidence on this score is a bare allegation in the Daileader Declaration that "[b]y the time [Mr. Rogas] resigned from NS8 . . . Rogas had collected a substantial salary, bonuses, and other compensation." Daileader Decl. ¶ 35. That statement contains *zero* competent support explaining when the purported "salary, bonuses, and other compensation" were allegedly transferred to Mr. Rogas. Worse yet, it does not allow Mr. Rogas a fair opportunity to probe and defend the Trustee's claim to recover the Employment Proceeds. Without that, the Trustee has not (and cannot) carry its burden to show that the fraudulent transfer claims predicated on the Employment Proceeds are timely; it is more than equally likely that some (or all) of the putative Employment Proceeds transfers (if any were ever made, a fact the Trustee also fails to prove) fall outside the limitations period.

At the summary judgment stage, all inferences must be drawn *against* the movant, here the Trustee. *See, e.g.*, *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). That point is particularly apt in this case, where the Trustee elected to seek summary judgment without taking discovery. The Trustee must establish the specifics of those transfers it contends were fraudulently made, including the dates and amounts of the transfers which the Trustee has declined to present

---

[8]   The Trustee's fraudulent transfer claims are also subject to the limitations period established by 11 U.S.C. § 546(a). The parties entered into a tolling agreement which makes the section 544 and 548 claims timely under that provision but does not otherwise save or revive any claims that were barred as of the petition date.

to the Court. Summary judgment on the Trustee's fraudulent transfer claims for the Employment Proceeds is thus precluded by its failure to demonstrate, with any evidence—let alone admissible evidence—showing that the transfers were made within the applicable limitations period.

**IV.    The Trustee Fails to Establish Entitlement to Summary Judgment on the Common Law Claims.**

**A.    The Trustee has not (and cannot) established the requisite elements of its common law fraud and unjust enrichment claims.**

The heart of the Trustee's common law fraud and unjust enrichment claims is that Mr. Rogas defrauded investors by making false representations that induced them to invest in NS8. *See, e.g.*, Compl. ¶¶ 112-18; Mot. at 38-39 (i.e., seeking unjust enrichment damages "to prevent Rogas from unjustly and inequitably retaining four years of windfall benefit at the expense of NS8's _creditors_") (emphasis added). The Trustee then takes that and tries to shoehorn it into a claim by NS8 against Mr. Rogas. This Court has repeatedly rejected those types of claims.

***As to the fraud cause,*** the Trustee's theory is premised on an alleged fraud against NS8 itself. But common law fraud requires proving justifiable reliance on the fraudulent representation. *In re OSC 1 Liquidating Corp.*, 529 B.R. 825, 832 (Bankr. D. Del. 2015); *Zirn v. VLI Corp.*, 681 A.2d 1050, 1061 (Del. 1996) (fraud claim must fail where plaintiff cannot show justifiable reliance); *Debakey Corp. v. Raytheon Serv. Co.*, 2000 WL 1273317 at *22 (Del. Ch. Aug. 25, 2000) (dismissing fraud claim where plaintiff could not justifiably rely on allegedly fraudulent statement).

Here, the alleged fraudulent representations regarding NS8's customer count and financial status were made by Mr. Rogas, on behalf of NS8, to _investors_. The Trustee's theory is insufficient to establish a fraud on the _company_ because the company cannot rely on fraud that it perpetrated itself. Indeed, this Court has already found that Mr. Rogas' fraud is imputed to the company—a finding that the Trustee asked this Court to make. *DDE Partners, LLC*, 2023 WL 6938144, at *2.

Thus, NS8 cannot claim to have been induced to take any action as a result of its own alleged misrepresentations or omissions. *See, e.g.*, *In re Art Institute of Philadelphia LLC*, 2022 WL 18401591, at *15-16 (Bankr. D. Del. Jan. 12, 2022) (dismissing common law fraud claim brought by trustee against directors where "the debtors were the perpetrators of the alleged fraud—submitting certifications of compliance on which *the government relied* in advancing federal funds—not the victims."); *Giuliano v. Fleming (In re Nobilis Health Corp.)*, No. 21-51183 (Bankr. D. Del. Jul. 27, 2022), Dkt. No. 75 at 19-20 ("The trustee, who steps in the shoes of the debtors, cannot sue for fraud in the absence of evidence that the debtors were the victims (rather than the perpetrators) of the alleged fraud. The core allegation, after all, is that the directors and officers defrauded lenders and investors by inflating the revenue and value of its books and records. There is no allegation that the debtors relied on any false representation of material fact that would give rise to a claim of common law fraud."); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir. 1982) (where company and auditors engaged in fraud to aggrandize the company to attract outside investors, fraud claim brought on behalf of company did not lie, because company "cannot also be a victim entitled to recover damages, for he cannot have relied on the truth of the fraudulent representations, and such reliance is an essential element in a case of fraud."); *In re Laverdure*, 399 B.R. 310, 314-15 (Bankr. N.D. Ill. 2008) (where misrepresentation was directed to creditors, company was not likely to be misled where "misrepresentation or omission was not aimed at him in the first place," and that trustee "has standing only to bring claims of the estate, not claims of individual creditors").

***The same is true for the Trustee's claim for unjust enrichment***. As to that cause of action, the Trustee must show that Mr. Rogas received an enrichment, NS8 was impoverished, a relation between the enrichment and impoverishment, the absence of justification, and the absence of a

remedy provided by law. *See Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53, 69 (Del. 2022). For the same reasons the Trustee cannot show it is entitled to summary judgment on its fraud theory, it cannot show it is entitled to summary judgment on unjust enrichment theory. NS8 was a beneficiary, not a victim, of any fraud.

## V.        The Trustee Fails to Establish the Measure of its Claimed Damages.

Summary judgment is also not warranted here because the Trustee has not proven the claimed damages as a matter of law.

***The Trustee's asserted damages on the fraudulent transfer claims have already been satisfied***. It is undisputed that, in the DOJ Matter, Mr. Rogas was ordered to pay his victims more than $112 million in restitution and that the government obtained a money judgment for more than $17.5 million—the same amount the Trustee seeks to recover as the Tender Offer Proceeds here. It is also undisputed that, in the SEC Matter, Mr. Rogas consented to disgorgement of more than $17.5 million—again, the same amount as the Trustee seeks to recover as the Tender Offer Proceeds here. Both of those orders are premised on the same harm the Trustee seeks to recover on its statutory claims in this case. And both of those orders inure to the same beneficiaries as the Trustee seeks to recover for in this case—the creditors of NS8's estate are identical to those who will recover under the government's restitution, disgorgement, and money judgment.

The Trustee cannot, in the guise of representing those creditors and suing under the fraudulent transfer statutes, recover the same sum that the United States Government has already recovered. The Trustee (its beneficiaries) are limited to a single satisfaction. 11 U.S.C. § 550(d); *In re Sanchez Energy Corp.*, 139 F.4th 411, 420 (5th Cir. 2025) ("[p]roperty that has already been returned cannot be 'recovered' in any meaningful sense.") (quoting *In re DeBerry*, 945 F.3d 943, 947 (5th Cir. 2019)); *In re Eleva, Inc.*, 302 B.R. 112, 2003 WL 21516983, at *2 (10th Cir. B.A.P. June 30, 2003) (because the trustee or debtor is entitled to a single satisfaction, recovery is capped

at the amount of the avoidable transfer.) The Trustee is not entitled to recover the Tender Offer Proceeds a second time for distribution to the same individuals and entities who will already receive a distribution from the government. The Trustee's recovery under section 550 must be reduced by the value of the government's money judgment and/or disgorgement or, at a minimum, the value of the government's recovery to date on that money judgment and/or order of disgorgement and Mr. Rogas' agreement to forfeit any and all assets in his name to satisfy them.

***The Trustee's request for damages on the common law and statutory claims fails.*** First, the Trustee's damages model double counts, in at least three ways. One, the Trustee includes the value of the alleged fraudulent transfers in the value of the alleged common law claims. The Trustee is only entitled to a single recovery on its claims—it cannot recover some $19 million in the form of fraudulent transfer and also recover that same sum as part of its breach of duty, fraud, or unjust enrichment claim. *See In re MTE Holdings LLC*, 2024 WL 3272224, at *10 (Bankr. D. Del. July 1, 2024) ("The single recovery rule, of course, means that the trustee can only recover the $8.5 million a single time. He cannot recover the same $8.5 million on both the first and second counts."). To the extent the Trustee succeeds on either of its statutory or common law theories, any award must be reduced from the other.

Second, the Trustee fails to account for recoveries it has already made. For example, the Trustee has already recovered "over forty million dollars." Bankr. Dkt. No. 727 at 10. That recovery derives from the same "harm" alleged in the Trustee's common law claims against Mr. Rogas. The Trustee cannot recover the money twice. Any award against Mr. Rogas must be reduced by the amount the Trustee has already recovered. *See Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996) ("A basic principle of compensatory damages is that an injury can be compensated only once.").

29

Three, the Trustee fails to account for the money already recovered by the DOJ through Mr. Rogas' restitution payments and forfeiture. The Trustee's theory of this case is that investors were harmed, that same injury accrued to NS8, and that injury must be compensated by Mr. Rogas. He has already made progress on that. The Trustee cannot recover in this lawsuit what has already been paid and recovered by the government. *Id.*

Finally, the Trustee has not proven that the damages it seeks accrued within the limitations period on its common law claims. The Trustee's state law claims (breach of fiduciary duty, fraud, and unjust enrichment) are all subject to a three-year limitations period under Delaware law. 10 Del. Code § 8106. Any claim that accrued prior to October 27, 2017, is out of time. Yet the Trustee provides *zero* evidence that the full $135,670,694 in damages it seeks on the common law claims is tied to conduct during the relevant period. Instead, the Trustee handwaves at the plan and asserts that every claim asserted against NS8 is recoverable from Mr. Rogas. That is insufficient to satisfy the Trustee's burden at the summary judgment state; it must prove its damages with particularity, including by establishing that they accrued within the relevant limitations period. *In re HH Liquidation, LLC*, 590 B.R. 211, 273, 278 (Bankr. D. Del. 2018) (noting the standard that "a plaintiff alleging a breach of fiduciary duty claim must prove its damages by a preponderance of the evidence" and that the court "cannot award damages that are based on mere speculation or conjecture where a plaintiff has failed to adequately prove damages" to reject damages theory based on "all of [the corporate entity's] 'unsatisfied liabilities'" as "speculative and unproven" and "founded upon uncertainty"); *Ravenswood Inv. Co. v. Estate of Winmill*, 2018 WL 1410860, at *2 (Del. Ch. Mar. 21, 2018) (The court "cannot create what does not exist in the evidentiary record, and cannot reach beyond that record when it finds the evidence lacking.").

## CONCLUSION

For the reasons set forth herein, the Court should deny the Trustee's motion for summary judgment.

Respectfully Submitted,

Dated: August 26, 2025
Wilmington, Delaware

/s/ *Russell C. Silberglied*
Russell C. Silberglied (No. 3462)
Robert C. Maddox (No. 5356)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302)-651-7700
Facsimile: (302)-651-7701
E-mail: silberglied@rlf.com
maddox@rlf.com

-and-

William M. Sullivan, Jr. (admitted *pro hac vice*)
Alex G. Anderson (admitted *pro hac vice*)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, NW
Washington, D.C. 20036
Telephone: (202) 663-8000
Facsimile: (212) 663-8007
Email: wsullivan@pillsburylaw.com
alex.anderson@pillsburylaw.com

*Counsel for Defendant Adam P. Rogas*

31