**BLANKROME**

1201 N. Market Street | Suite 800 | Wilmington, DE 19801
blankrome.com

*Phone:*  *(302) 425-6479*

*Email:*  *stanley.tarr@blankrome.com*

June 12, 2026

**VIA ECF**

Hon. Craig T. Goldblatt
United States Bankruptcy Court for the District of Delaware
824 Market Street
3rd Floor, Courtroom 7
Wilmington, DE 19801

> Re:   *Drivetrain, LLC*, in its capacity as Trustee ("Plan Trustee") of the Cyber
> Litigation Trust *v. Adam P. Rogas*, Adv. Pro. No. 24-50180 (CTG)

Dear Judge Goldblatt:

The parties have tried, without success, to resolve certain disputes through their respective engagements with the U.S. Attorney's Office for the Southern District of New York. Accordingly, Plan Trustee requests that the Court enter summary judgment in the proposed form of order attached as **Exhibit A** and provides the following damages analysis.

**I.      Procedural Background**

At the conclusion of the November 18, 2025 oral argument, the Court asked whether the parties should be given an opportunity to discuss whether a resolution was reasonably reachable, given the Court's impression that areas of agreement exceeded areas of disagreement. [*See* 2/12/26 Transcript, 3:8-15; *also* 11/18/25 Transcript, 59:4-60:6].

The Court began oral argument by expressing its tentative conclusions on the salient issues:

(1)      the Court has jurisdiction over Plan Trustee's claims and may issue proposed findings of fact and conclusions of law that would be subject to *de novo* review by the District Court [11/18/25 Tr., 7:7-9:9];

(2)      there is no genuine issue of material fact about the amount of proceeds ("Tender Offer Proceeds") Defendant received from NS8's repurchase of tendered shares ("Tender Offer") as actual fraudulent transfers [11/18/25 Tr., 9:15-10:10];

(3)      employment proceeds that Defendant received from NS8 ("Employment Proceeds") are likely actual fraudulent transfers or, at a minimum, constructive fraudulent transfers because, on this record, it is difficult to conclude that NS8 received reasonably equivalent value [11/18/25 Tr., 10:11-20];

BLANKROME

June 12, 2026
Page 2

(4)     liability for breach of fiduciary duty seems clear enough on the record before the Court [11/18/25 Tr., 10:21-11:5]; and

(5)     it is unclear to what extent the Court may grant summary judgment beyond Defendant's liability with respect to fiduciary breach damages [11/18/25 Tr., 11:6-13:2].

Plan Trustee requested the February 12, 2026 status conference after nearly three months of unsuccessful attempts to obtain Defendant's good-faith response to the Court's critical query at oral argument: what amount of harm was caused to the enterprise, or, stated differently, what is the extent of the estate's legitimate damages claims against Defendant for his breach of fiduciary duties? [*See* 11/18/25 Tr., 11:6-13:2; 56:22-60:6]. At the status conference, Plan Trustee asked the Court to allow the parties to submit additional briefings on that question. [*See* 2/12/26 Tr., 7:2-6; 11:8-24].

## II.     Plan Trustee's Request for Summary Judgment

Consistent with the Court's tentative conclusions, Plan Trustee agrees that: (1) the Court may, at a minimum, enter findings of fact and conclusions of law on Plan Trustee's claims against Defendant; (2) there is no genuine issue of material fact that the Tender Offer Proceeds Defendant received were actual fraudulent transfers; (3) there is no genuine issue of material fact that the Employment Proceeds Defendant received while NS8 was not a legitimate operating business were actual fraudulent transfers or, alternatively, constructive fraudulent transfers; (4) there is no genuine issue of material fact that Defendant is liable for breach of fiduciary duty; and (5) the proper measure of fiduciary breach damages is the harm to the enterprise.

Accordingly, the sole remaining question for the Court in connection with summary judgment is the question the Court identified at oral argument on November 18, 2025: *what is the amount of harm caused to the enterprise or, put another way, what is the extent of the estate's legitimate claims for damages against Defendant on account of Defendant's breach of fiduciary duties*? Here, sufficient undisputed facts in the record allow the Court to calculate, without expert testimony, the damages recoverable from Defendant for the actual fraudulent transfers he received and his fiduciary breach.

### A.  Actual Fraudulent Transfer Avoidance and Recovery Damages

Plan Trustee seeks summary judgment avoiding and recovering from Defendant the Tender Offer Proceeds and Employment Proceeds transferred to him as actual fraudulent transfers, in the

BLANKROME

June 12, 2026
Page 3

amount of $18,372,213.55[1] ("Fraudulent Transfer Damages"), *plus* pre-judgment interest from the demand date (here, the Complaint's filing date, October 28, 2024) to the date of judgment, *plus* post-judgment interest from the judgment date until paid.

## B. Fiduciary Breach Damages

Plan Trustee seeks summary judgment against Defendant for breach-of-fiduciary-duty damages in the amount of $80,390,287.91[2] ("Fiduciary Breach Damages"), *plus* pre- and post-judgment interest, *less* dollar-for-dollar credit for the gross amount of Tender Offer Proceeds Plan Trustee actually recovers from Tender Offer participants.

### 1.    *Reasoning*

At oral argument, the Court stated that, under ordinary Delaware breach-of-fiduciary-duty law, damages are measured by harm to the enterprise, s*ee* 11/18/25 Tr., 11:17-20, and that, after a certain point, every dollar leaving the company should be recoverable from Defendant for that breach. *Id*. at 59:7-11. During the February status conference, the Court considered whether it could issue findings of fact and conclusions of law on summary judgment for the company's $73 million transfer to Tender Offer recipients as harm to the enterprise, rather than the $135 million in tort damages confirmed under the Debtor's plan of liquidation, which the Court viewed as creditor harm. *See* 2/12/26 Tr. at 9:8-22. Consistent with Plan Trustee's representation at that status conference, Plan Trustee seeks, for summary judgment purposes only, judgment against Defendant for: (a) the dollars the company transferred to early investors as Tender Offer Proceeds (not the tort damages confirmed under the Plan), which resulted directly from Defendant's deception of the NS8 Board in June 2020 (*i.e.*, long after Defendant admits there was no viable, legitimate

---

[1] The "Fraudulent Transfer Damages" consists of the Tender Offer Proceeds and Employment Proceeds Defendant received, as evidenced by Defendant's judicial admissions in his Answer [D.I. 7, at ¶¶ 2, 49, 53] and by his admissions in Court that he is liable for the fraudulent transfer of Employment Proceeds received while NS8 was not a legitimate operating business, including from fall 2019 through the Petition Date. [*See* 2/12/26 Tr., 49:3-51:18]. In the two years prior to the Petition Date, Defendant received $629,755.25 in salary and $200,000.00 in bonuses. *See* Complaint, at ¶ 53.

[2] Damages need not be proven with certainty in fiduciary-breach cases because Delaware law does not "require certainty in the award of damages where a wrong has been proven and injury established." *Enhabit, Inc. v. Nautic Partners IX, L.P.*, 2024 WL 4929729, at *29 (Del. Ch. 2024) (*internal citations omitted*). So long as "the plaintiff can prove the fact of damages with reasonable certainty ... [t]he amount of damages can be an estimate." *Id.* "[O]nce a breach of duty of loyalty is established, uncertainties in awarding damages are generally resolved against the wrongdoer." *Id.*

operating business) [*See* 11/18/25 Tr., 29:4-5; 2/12/26 Tr., 9:25-10:25]; *plus* (b) the Court-approved fees and costs paid by the company to its chapter 11 professionals through the Plan's effectiveness [*See* 11/18/25 Tr., 29:7-8]; *plus* (c) the dollars remaining in the estate when the voluntary petition was filed [*See* 11/18/25 Tr., 29:16-19].[3] For each amount, Plan Trustee asserts that no genuine dispute of material fact exists and that the Court may *independently* determine the amount *as a matter of law*.

### a.     Dollars Transferred to Early Investors in Tender Offer

Defendant has not raised any genuine dispute of material fact regarding his breach of fiduciary duties. Indeed, Defendant's breach was the basis for the Court's imputation of Defendant's intent to NS8's Board of Directors in the *DDE Partners* opinion [*See* Adv. Pro. No. 22-50439, 2023 WL 6938144 (Bankr. D. Del. Oct. 19, 2023)] and the *Dawson* summary judgment [*See* Adv. Pro. No. 24-50177, D.I. 57 (Bankr. D. Del. Feb. 20, 2026)]. Nor has Defendant raised a genuine dispute that his breach materially harmed the NS8 enterprise by inducing the Board's approval of the Tender Offer and NS8's June 17, 2020 wire transfer to Carta, Inc. of $67,998,059.67 [*See* NS8's June 2020 Silicon Valley Bank account statement at D.I. 29-12, page 40 of 51].

### b.     Court-Approved Fees and Costs of Estate's Professionals

Defendant has not raised any genuine dispute of material fact that his fiduciary breach materially harmed the enterprise by forcing the Debtor's chapter 11 filing, thereby requiring NS8 to employ and pay its professionals' Court-approved fees and costs in the amount of $11,060,428.24 [*See* Order approving the Debtor's professionals' final fee applications at D.I. 784], which excludes millions in professional fees paid prepetition and post-confirmation. The fees approved by the Court, to which Rogas never objected, were necessarily incurred in prosecuting the chapter 11 case, recovering Tender Offer Proceeds from various transferees, and confirming a plan that provides a path for meaningful recovery for the tort victims defrauded by Defendant.

---

[3] Respectfully, Plan Trustee asserts that the 2/12/26 Transcript erroneously captures the Court's statement, which Plan Trustee avers was meant to convey the following: "if what you really want is a judgment on which you can execute, why wouldn't you give thought to essentially *dropping the [judgment amount sought on account of the]* **fiduciary duty claim**, taking the $73 million, I can make findings and conclusions, but I can give you those findings and conclusions right away." [2/12/26 Tr. 9:16-20].

BLANKROME

June 12, 2026
Page 5

### c.   Dollars Left in Estate upon Petition Filing

Defendant has not raised any genuine dispute of material fact that his fiduciary breach materially harmed the enterprise by falsely inflating NS8's financial and customer reporting, thereby causing NS8's $1,331,800 cash balance as of the petition date [*See* Initial Budget attached to the interim financing order at D.I. 43-2] to be consumed in connection with the chapter 11 cases.

2.   *No Offset for Recovery of Defendant's Tender Offer Proceeds*

Plan Trustee asserts that allowing Defendant to offset fiduciary-breach damages by the Tender Offer Proceeds avoided and recovered *from Defendant* would inequitably benefit Defendant for the fraud he masterminded. A breach-of-fiduciary-duty claim is separate from avoidance and recovery of the Tender Offer Proceeds; the Fiduciary Breach Damages also reasonably apportions Defendant's equitable tort liability[4] and accounts for his unjust enrichment, because those proceeds are the amount he personally received and from which he financially benefited.

Delaware law permits wide latitude in awarding damages for breach of fiduciary duty; the Fiduciary Breach Damages is reasonable and appropriate under the circumstances. Any delay in judgment prejudices Plan Trustee and the estate if assets are hidden or relevant statutes of limitations expire, both of which further decrease the likelihood of Plan Trustee's recovery. Relatedly, Plan Trustee asks that the Court, in issuing any summary judgment decision, not foreclose prospective recovery from subsequent transferees by limiting the period during which Defendant's fraud may be evidenced. Although not necessary for summary judgment, there is ample record evidence that Defendant committed fraud **before 2019**. [*See, e.g.*, Daileader Declaration, D.I. 24 at Exhibits A-1 through A-10, and B-1 through B-45].

---

[4] *See* J. Travis Laster and Michelle D. Morris, BREACHES OF FIDUCIARY DUTY AND THE DELAWARE UNIFORM CONTRIBUTION ACT, Delaware Law Review (2010) (confirming that breach of fiduciary duty is an "equitable tort"). Likewise, under Delaware law, the Court's "powers are complete to fashion any form of equitable and monetary relief as may be appropriate, including rescissory damages." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983); *Harman v. Masoneilan Intern., Inc.*, 442 A.2d 487, 500 (Del. 1982) (finding that "the relief available in equity for tortious conduct by one standing in a fiduciary relation with another is necessarily broad and flexible"); *Restatement (Second) of Torts*, § 874 (1979).

BLANKROME

June 12, 2026
Page 6

Respectfully submitted,

Stanley B. Tarr

cc:     John Lucian (john.lucian@blankrome.com)
        Patrick E. Fitzmaurice (patrick.fitzmaurice@pillsburylaw.com)
        Russell C. Silberglied (silberglied@rlf.com)